**COMMUNITY TELEVISION SERVICES, INC., a corporation, Plaintiff,**

v.

**DRESSER INDUSTRIES, INC., a corporation, Defendant.**

**No. Civ. 75–4056.**

United States District Court, D. South Dakota, S. D.

July 27, 1977.

Ellsworth E. Evans and Deming Smith, Davenport, Evans, Hurwitz & Smith, Sioux Falls, S. D., appeared in behalf of the plaintiff.

Harold C. Doyle, May, Johnson & Burke, Sioux Falls, S. D., and G. Alan Cunningham, Faegre & Benson, Minneapolis, Minn., appeared in behalf of the defendant.

NICHOL, Chief Judge.

This is an action by a purchaser against a seller arising out of the collapse of a television and radio broadcasting tower. The case was tried to a jury, commencing on November 29, 1976, with the verdict rendered on December 17, 1976. The jury found in favor of plaintiff, and assessed damages in the amount of $1,385,001.61. This matter is now before the court on post-trial motions filed by defendant.

Defendant has submitted two motions, in the alternative. Initially, this court is requested to vacate the judgment for plaintiff and enter a judgment notwithstanding the verdict, finding for defendant. Alternatively, defendant requests a new trial on Count III of the complaint.

This case arose after plaintiff's 2000 foot [1] television and radio broadcasting tower collapsed during a blizzard, in the early hours of January 11, 1975. The tower, along with the antennas and cables attached to it, was totally destroyed. In addition, one building beneath the tower was demolished, and another was partially damaged.

The tower which collapsed had been purchased by plaintiff from defendant, which designed, manufactured, and erected it.[2] The specifications incorporated in the contract for sale disclosed that "The tower shall be designed to resist a uniform wind load per drawing T–5172, sheet S–1, 60 psf on flats." As the testimony and evidence presented at trial demonstrated, this specification contemplated the construction of a guyed tower which would withstand a force of 60 pounds per square foot on flat surfaces. Defendant's advertising brochure stated that the wind velocity necessary to create this amount of pressure would be approximately 120 miles per hour, absent any other factors.[3] This court found as a

---

1. The overall height of the tower and its appendages was 1,984 feet, but it was referred to throughout the trial as a "2000 foot" tower.

2. The erection of the tower was performed by Allied Construction, which was retained by defendant for that purpose.

3. The evidence and testimony in this case demonstrated that the presence of ice and snow, separately and in combination, on the tower would increase the size of the tower members exposed to the wind, and would therefore decrease the velocity of wind necessary to create the 60 pounds per square foot pressure. This fact was argued extensively to the jury by

matter of law that this specification created an express warranty.

Plaintiff proceeded on various theories of liability. The jury was ultimately instructed on negligence, strict liability in tort, and breach of express warranty. The jury's answers to the special interrogatories submitted to them by the court show that they based defendant's liability on a breach of the express warranty.

■ Defendant's first attack on the verdict addresses issues determined by this court as a matter of law during the course of the trial. Specifically, defendant takes issue with this court's findings that the six month warranty limitation was manifestly unreasonable, and that the remedies provided by the contract failed of their essential purpose. This court has carefully reconsidered these issues in light of the record and the briefs submitted by the parties, and is not persuaded to change its prior rulings.

Defendant's second argument focuses on the answers by the jury to the special interrogatories submitted by the court. Defendant alleges that the jury's answers are in irreconcilable conflict, and that for this reason the verdict should be set aside and a new trial granted. The court finds that this argument is not well founded.

Defendant contends that by finding no liability on the basis of negligence, and no liability on the basis of strict liability in tort, the jury was logically prevented from finding liability based on a breach of the express warranty. Defendant asserts that a finding of a "defect" is inherently involved under each of these theories, and that the jury could not find the tower "defective" for one theory and not for the others. Defendant argues that this alleged inconsistency necessitates a new trial.

■ This court has a duty to attempt to reconcile the special interrogatories with the general verdict, if possible, to avoid invading the province of the jury. Wright & Miller, Federal Practice and Procedure, section 2513 (1971); *cf. Gallick v. Baltimore*

& *Ohio R. Co.*, 372 U.S. 108, 119, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963). The court has carefully reexamined the record in this case, and concludes that the answers to the special interrogatories are not inconsistent with themselves or with the general verdict upon the facts in the record.

■ While it may be true that each of the theories considered by the jury contemplates the finding of a "defect" in some sense, defendant's argument glosses over the other distinctive elements which each theory contains. Negligence requires a finding of a failure to adhere to a standard of care required by law. Strict liability in tort, as explained by section 402A of the Restatement of the Law, Torts, Second, requires a finding that the defect in the product rendered it unreasonably dangerous to the user or his property. *See Engberg v. Ford Motor Co.*, 205 N.W.2d 104 (S.D.1973). As the comments to section 402A point out, even if a product is defective in some manner, that defect must render the product "unreasonably" dangerous. A product can be dangerous without being unreasonably dangerous. *See* Restatement of the Law, Torts, Second, section 402A, comment k.

■ An examination of the record convinces this court that the jury's finding is supported by the evidence, and that failure to find liability on the theories of negligence and strict liability in tort is not inconsistent with the particular facts in this case. A new trial is not mandated on this basis.

Defendant's final contention is that the jury did not properly determine the amount of damages to be awarded plaintiff, and that a new trial should be had on this issue. The court finds this contention meritorious.

The jury instruction relating to the measure of damages read:

Now, plaintiff's damages may be ascertained by determining the cost of constructing a similar tower, replacing the antenna, repairing the damaged buildings, and deducting therefrom the depreciation suffered by reason of age and use,

---

defendant. The jury apparently found that the presence of ice and snow on the tower at the

time of a collapse, if any, had been insufficient in amount to be a causal factor in the collapse.

unless such cost is greater than the difference between the before and after value of the tower, antenna and buildings damaged, in which case the difference in market value before and after the collapse would be the proper measure of damages.

Under this instruction the jury was to award the lesser of diminution in market value or cost of replacement less depreciation, unless they found the two amounts to be equal. Plaintiff asserted throughout the trial that the amount of loss suffered by reason of the collapse of the tower could only be measured by the replacement cost less depreciation, owing to the special circumstances present in this case.

■ The South Dakota Supreme Court has recognized replacement cost minus depreciation as a proper measure of damages. *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 258 (S.D.1976); *see also Big Rock Mountain Corp. v. Stearns-Roger Corp.*, 388 F.2d 165 (8th Cir. 1968). South Dakota has also codified the measure of damages recoverable for a breach of warranty.

The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

SDCL 57–8–37 (1967). In addition, consequential damages are recoverable in this case, under this court's previously announced rulings. SDCL 57–8–40 (1967). The question in this case is what method of measuring damages should have been applied.

As the Eighth Circuit Court of Appeals noted in *Big Rock Mountain:*

Where there is more than one method of estimating damages, that method which is most definite and certain should be adopted. No one method is exclusive where several exist, but that one should be chosen which best achieves the fundamental purpose of compensation to the injured person for his loss; and, if the facts show that either of two measures of damages will fully compensate plaintiff for his loss, that measure must be adopted which is less expensive to defendant.

388 F.2d 165, 170 (8th Cir. 1968) (quoting 25 C.J.S. Damages § 72 (1966)).

■ This court has carefully examined the record in this case in light of the general admonition that an injured party should be fully compensated for losses suffered through the fault of another, but that he should not be allowed a windfall. From this examination it is concluded that under the specific circumstances of this case plaintiff will be fully compensated for the injuries suffered only by measuring the cost of replacing and repairing the damaged and destroyed structures and equipment, and subtracting therefrom a reasonable depreciation for the use plaintiff had enjoyed prior to the damage. *Metropolitan Life Ins. Co. v. Farmers Co-operative Co.*, 68 S.D. 338, 2 N.W.2d 665 (1942); *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251 (S.D.1976).

■ The jury assessed plaintiff's damages in the amount of $1,385,001.61. Although the jury was apparently attempting to calculate the amount of damage suffered by plaintiff through use of the replacement cost less depreciation approach, the amount ultimately awarded is not justified by the evidence. Viewing the evidence in the light most favorable to the plaintiff, the largest recovery justified by the evidence under the court's instructions was $1,274,631.60.[4] In

4. This figure is arrived at through the use of plaintiff's exhibits 100 and 101. The replacement cost for the tower was $1,099,880.95. From this figure was subtracted $20,000.00, which represented the amount of betterment over the tower replaced due to some differences in the construction. From the remainder of $1,079,880.95 was subtracted $129,585.71, which represented depreciation of six years over a useful life of 50 years.

The replacement cost for the antenna was $343,338.93. From this was subtracted $8,000.00 for overstock returned to the manufacturer. From the remainder of $335,338.93, this court subtracted $50,300.86, which represents six years depreciation over a useful life of 40 years.

light of this, the court finds the verdict excessive as a matter of law. The excessiveness of the verdict, however, is not so shocking as to indicate that it was the result of passion and prejudice on the part of the jury. This court is of the opinion that an unconditional new trial on the issue of damages is not warranted.

■ It is well settled that a trial court may condition the denial of a motion for new trial in circumstances such as these on a remittitur by plaintiff. *See generally* Wright & Miller, Federal Practice and Procedure, section 2815 (1973), and cases cited therein. It is this court's opinion that in this case the only result which would be consistent with the Seventh Amendment would be to require plaintiff to remit the excess of the verdict over the maximum which the jury could have awarded under the evidence and instructions as a condition of the denial of defendant's motion for a new trial on the issue of damages. Wright & Miller, Federal Practice and Procedure, section 2815 (1973); *see also Rice v. Union Pacific R. Co.,* 82 F.Supp. 1002 (D.Neb. 1949).

This court will, therefore, deny defendant's motion to vacate the judgment and to enter a judgment notwithstanding the verdict. Further, this court having determined that the verdict was excessive to the extent of $110,370.01, it will be ordered (1) that, if and upon the condition that, within thirty days of the entry of this memorandum decision, plaintiff, by one of its attorneys of record, shall serve upon opposing counsel and file in this case a remittitur of the sum of $110,370.01 upon the verdict found and returned herein and a release, to that extent only, of the judgment entered upon the verdict, the motion for a new trial be denied and the judgment confirmed for the remaining sum; but (2) that if such remittitur and release be not so served and filed within thirty days of the entry of this memorandum decision, the motion for a new

The repair and replacement costs on the buildings totalled $45,699.17. From this figure was subtracted $6,397.88, which represented seven years depreciation over a useful life of 50 years.

trial be sustained, the judgment entered upon the verdict be vacated and cancelled, the verdict be set aside as to the issue of damages, and a new trial be granted in the case solely on the issue of damages.

The total net depreciated replacement value arrived at in this manner for the tower, antenna, and buildings was $1,274,631.60.