2004 SD 28

**KEYSTONE PLAZA CONDOMINIUMS ASSOCIATION, Plaintiff and Appellee,**

v.

**Ron EASTEP, Defendant and Appellant.**

No. 22732.

Supreme Court of South Dakota.

Considered on Briefs Nov. 17, 2003.

Decided March 3, 2004.

Scott A. Roetzel of Johnson, Eiesland, Huffman & Clayborne, Rapid City, South Dakota, Attorneys for plaintiff and appellee.

Kenneth E. Jasper of Jasper Law Office Rapid City, South Dakota, Attorney for defendant and appellant.

KONENKAMP, Justice.

[¶ 1.] Keystone Plaza Condominiums Association sued Ron Eastep, owner of a condominium unit controlled by the association. The complaint alleged that Eastep failed to open his business for 99 days between the months of May and September of 2001, in contravention of association bylaws. The association sought a judgment for liquidated damages. Eastep responded that the association did not have

the authority to levy liquidated damages against him. His response was based in part on a previous decision in magistrate court concluding that the association's non-compliance section of its bylaws providing that a fine be levied for noncompliance with the rules of the association was void. Following arguments of counsel and consideration of briefs, the circuit court granted summary judgment for the association. Eastep appeals, and we reverse.

## Background

[¶ 2.] Since 1990, Eastep has owned a unit in the Keystone Plaza Mall. Currently, he owns Unit No. 15, which he purchased in 1997. Keystone Plaza Condominiums was created by a master deed, in accordance with SDCL 43–15A–3 and 43–15A–4. The deed was recorded with the Pennington County Register of Deeds. Relevant here, the deed provided that unit owners must "comply with the provisions of this Deed, the Bylaws, and decisions and resolutions of the council of co-owners, or its representatives, as determined or amended from time to time...." It further stated that "failure to comply with any such provisions or resolutions" would be "grounds for an action to recover sums due for *damages* or for injunctive relief." (Emphasis added.) In addition, the deed provided:

All present or future owners, tenants, future tenants, or any other person that might use the facilities of the project in any manner are subject to the provisions of this Deed, and the mere acquisition or rental of any of the units of the project or the mere act of occupancy of any of the units shall signify that the provisions of this Deed are accepted and ratified.

[¶ 3.] Along with recording the deed, Keystone filed the Bylaws of Keystone Plaza Condominiums Council of Co–Owners. Relevant portions of the amended bylaws provide:

Article III   Section 3:

Annual fall meetings shall be held at a time convenient for the majority of the members of the Association.... There shall also be an annual spring meeting held at a time convenient for the majority of the members of the association. At such meeting there shall be approved the current year's budget and approval of the current year's assessments. The owners may also transact such other business of the association at such meetings as may properly come before them.

Article III   Section 4:

It shall be the duty of the president to call a special meeting of the owners at any time the majority of owners shall determine it is necessary or in their best interest to hold a meeting. No business shall be transacted at a special meeting except as stated in the notice.

Article III   Section 5:

It shall be the duty of the secretary to mail a notice of each annual or special meeting, stating the purpose thereof, as well as the time and place of the meeting, to each owner of record, at least five (5) but not more than ten (10) days prior to such meeting. The mailing of notice in the manner provided in this section shall be considered notice served....

Article VII   Section 6(G):

Months of normal operation for the Keystone Mall shall be Memorial Day through Labor Day. Owners or tenants may be open prior to and after these dates at their discretion." In an extreme emergency written notification and reasonable reasons for not opening must be made to the board.

Article IX   Section 1:

These bylaws may be amended by the association in a duly constituted meeting for such purpose, and no amendment shall take effect unless approved by owners representing at least two-thirds (2/3) of all units in the project as shown in the master deed.

Article XI   Section 2:

After written notice of a violation, the continuing failure to comply with any of the bylaws will result in a fine of not more than Fifty Dollars ($50.00) per day being levied against the owner of record by the board of directors for each day the violation continues. The board of directors shall have the responsibility of notifying the offending party and setting the absolute day of compliance, (not to be more than ten (10) days from date of notification). Should the offending party not remedy the non-compliance by the specified date, the board of directors shall appropriate the fine and may instruct the association treasurer to begin small claims proceedings or file a lien to force compliance and collect all fines and costs from the offending party. The daily fine may be increased above Fifty Dollars ($50.00), but to not more than One Hundred Dollars ($100.00) per day with the written consent of the owners of at least two-thirds (2/3) of the units. No meeting of members shall be required to assess said fine.

[¶ 4.] In a previous action, brought in September 2000, the association sued Eastep, alleging that he had failed to open his business for sixteen days during the months of June, July, and August of 2000, in contravention of Article VII Section 6(G) of its bylaws. Because of this non-compliance, the association reasoned that it could assess a "fine" of $100 per day

under Article XI Section 2 against Eastep. The case was heard in magistrate court.

[¶ 5.] Not yet having received the magistrate's decision, Eastep sent a letter to the president of the association requesting that he be granted an exemption in 2001 from the opening requirements delineated in Article VII Section 6(G). The association's president responded to Eastep's request in a letter dated June 10, 2001:

As you know, the by-laws are very clear that all stores in the Keystone Mall must be open Memorial Day through Labor [D]ay each year. At the fall meeting last season, the association approved the requirement of seven consecutive hours of operation daily.

Ron, be on notice that the association has approved *a fine of $100.00 per day* starting Memorial Day, May 28, 2001, and will continue for each day that you are not open through Labor Day, September 03, 2001.

(Emphasis added.) Meanwhile, the magistrate issued a decision to the parties from the earlier litigation. As a result of that opinion, both the association and Eastep submitted proposed findings of fact and conclusions of law. On June 29, 2001, the magistrate accepted Eastep's findings and conclusions, which incorporated the memorandum opinion. The opinion stated:

The court has reviewed the Amended Bylaws Article [XI] sections 1 and 2. Section 2 provides a fine of not more than a $100.00 per day to be levied against the owner of record for non-compliance with any of the by-laws. The section does not say that the fine is to be paid as a compensation for any damage suffered by the Keystone Plaza Condominiums. Certainly in the present case it might be difficult to ascertain an exact amount of damages. In such a case an agreement for payment of liquidated damages would be appropriate.

However, in the present case the language of the by-laws seems to set out a penalty. There is no language that would lead one to believe that the fine was meant to be liquidated damages. At best the court cannot determine whether the by-laws provide for a penalty or liquidated damages. Because of this the court finds that Section 2 Article [XI] sets out a penalty and is thus void.

[¶ 6.] After this point, the record is unclear on what happened next. According to an affidavit submitted by one of the association's members, the association held its spring meeting on July 6, 2001.[1] The affiant asserted that Eastep received proper notice of the meeting. However, beyond the affidavit, nothing in the record shows that Eastep was so notified. The affiant further claimed that during that meeting, Article XI Section 2 was amended to clarify its import.[2] The document provides:

> We, the undersigned, representing owners and voting members of the Keystone Plaza Condominium association do hereby adopt and ratify the following amendment to the Bylaws of Keystone Plaza Condominium Association, to-wit:

> We hereby ratify and affirm that any and all provisions of the current Bylaws affecting the damages for units being closed in violation of the Bylaws, those provisions are amended to reflect that the voting members of the association acknowledge that such closures have a detrimental effect on all of the businesses of the mall as a whole. However, damages for such closures are difficult to ascertain with exact certainty and, therefore, the association agrees that the liquidated damages for such wrongful closures shall be equal to $100 per day for each day that the unit is not open. This amount shall be levied against the unit owner at such reasonable intervals as determined by the association and shall be due within ten (10) days following notice to the owner of the imposition of the liquidated damages. Failure to pay such amounts when due will subject the unit owner to litigation and other remedies as the association sees fit and the unit owner shall be responsible for all costs incurred in the prosecution of such actions, including reasonable attorneys' fees, together with reimbursement of the association at a rate of $35 per member, per hour for each hour spent by the members of the association in pursuing the action.

> This amendment is intended to clarify the Bylaws and to confirm that the intent of the association was that all such provisions in prior Bylaws are provisions for liquidated damages and not fines. This amendment shall also be retroactive to the beginning of the 2001 tourist season which season began on or about May 28, 2001. The association further agrees that this amendment can be re-

---

1. While the affidavit provided to the trial court contended that the meeting held on July 6, 2001 was the association's annual spring meeting, in its brief the association states, "Notice was sent to all owners requesting a special meeting and even with notice, Eastep failed to attend said meeting."

2. There is no way to discern from the record whether the association intended the document to be an "amendment" or a "clarification" of the previous section. During the summary judgment hearing, counsel for the association argued that the document represented a "clarification" of the previous amendment and was not "a, quote, unquote, amendment per se ... they just ratified or clarified in writing what their understanding was way back when, when this thing first came into being." However, in its brief, the association states, "The meeting was held and the *amendment for liquidated* damages was adopted without argument from Eastep." (Emphasis added.)

corded against the property generally known as the Keystone Mall and shall run with the land.

Dated this 6th day of July, 2001.

Despite the fact that the document begins by stating, "We the undersigned," and sixteen signature lines appear on the bottom, the document was not signed.

[¶ 7.] In November 2001, the association notified Eastep that he owed liquidated damages of $100 per day for the 99 days his unit was wrongfully closed between Memorial Day and Labor Day 2001. Eastep did not pay. In April 2002, the association again brought a complaint against Eastep. It requested that a judgment be entered against him for liquidated damages and attorney's fees. The matter was heard in circuit court. Both parties moved for summary judgment. The court granted summary judgment for the association. Eastep appeals, asserting that (1) the court misapplied the standards for summary judgment, (2) the association could not proceed against him when it had not filed a fictitious name statement, and (3) res judicata bars the current action.[3]

### Analysis and Decision

[¶ 8.] Under our familiar standard for reviewing summary judgments, we decide only whether genuine issues of material fact existed and whether the law was correctly applied. SDCL 15–6–56; *Bozied v. City of Brookings*, 2001 SD 150 ¶ 8, 638 N.W.2d 264, 268 (citation omitted). Summary judgment is not the proper method to dispose of factual questions. *Id.* Only when fact questions are undisputed will issues become questions of law for the court. *Id.* We will affirm the trial court's decision when we find any legal basis to support it. *Id.* Statutory and contract interpretation are questions of law reviewed de novo. *Id.* The existence of a legal duty is also a question of law. *Id.*

[¶ 9.] The association argues that in response to the magistrate's earlier decision, it either clarified its prior bylaws or amended them to comport with the decision. The association contends that notice of either a special meeting or the spring meeting was sent to all owners of the association and that Eastep "chose" not to attend the meeting. The association asserts also that the amendment or clarification for liquidated damages was adopted at that meeting.

[¶ 10.] Whether the July 7, 2001 document was an amendment or a clarification is not particularly significant here. While we will not venture an in-depth analysis of the two, it is sufficient to say that whether the document was an amendment or a clarification, certain procedural steps delineated in the master deed and bylaws of the association would have to have been followed. In either instance, whether an amendment or a clarification, the effect was the same. The record does not sufficiently demonstrate that the association's own procedures were followed to accomplish the end it seeks here.

[¶ 11.] Whether the July 7, 2001 meeting was a special meeting or a biannual meeting is significant. If, as argued in the association's brief, the meeting was a spe-

---

3. Because we reverse summary judgment and remand for further development of the record, we decline to reach Issue 3. Furthermore, in Issue 2, Eastep contends that under SDCL 37–11–1, this condominium association is required to register a fictitious name statement. This statute requires persons or co-partnerships that "engage in or conduct a business for profit in this state" to file with the register of deeds a statement "showing the name, post-office address, and residence address of each person interested in the business and the address where the main office of the business is to be maintained." However, Eastep has not established that the condominium association is a "business for profit."

cial meeting, the association bylaws clearly state that special notice of the meeting is to be given. Under Article III Section 4 of the association bylaws, only that subject matter specifically described in the notice of the meeting may be acted upon without approval of four-fifths of the members present. There is nothing in the record to indicate that such a procedure was followed.

[¶ 12.] Regardless of whether the meeting was a special meeting or a biannual meeting, the association bylaws plainly require notice of such a meeting. While the association argues that Eastep "chose" not to attend the meeting, the association presented no documentary evidence to prove that such notice was actually given. Only the affidavit presented by the association attests to this notice. However, the affiant's account is refuted by Eastep who insists that he did not receive such notice.

[¶ 13.] Furthermore, the record does not demonstrate that the July 7, 2001 amendment was ever adopted. No signatures were placed on it. The document uses language indicating that signatures are required for the amendment to take effect. It begins with the declaration, "We the undersigned." However, it ends without signatures.

[¶ 14.] Finally, the July 7, 2001 amendment states that owners not in compliance with the bylaws will be assessed liquidated damages "at such reasonable intervals as determined by the association." Whether the association notified Eastep at such "reasonable intervals" also remains unresolved. While the document leaves such a determination to the association, the association is bound by its own language. Although circumstances may have dictated that the association could not reasonably notify Eastep of the liquidated damages assessed against him until November 2001, those circumstances are not shown in the record.

[¶ 15.] In sum, whether the July 7, 2001 document constitutes an amendment, whether proper notice was given to Eastep, whether the meeting held on that date was a special or biannual meeting, whether Eastep received notice of such meeting, whether the document was ever adopted by the association members, and whether the association notified Eastep at reasonable intervals of liquidated damages assessed against him are all genuine issues of material fact that remain unresolved in the current record. The association, as the moving party, has not carried its burden to show that no genuine issues of material fact remain unresolved. "[S]ummary judgment is not a substitute for trial; a belief that the non-moving party will not prevail at trial is not an appropriate basis for granting the motion on issues not shown to be a sham, frivolous or unsubstantiated; summary judgment is an extreme remedy and should be awarded only when the truth is clear[;] and reasonable doubts touching upon the existence of a genuine issue of material fact should be resolved against the movant." *St. Onge Livestock Co., Ltd. v. Curtis*, 2002 SD 102, ¶ 25, 650 N.W.2d 537, 544 (quoting *Tibke v. McDougall*, 479 N.W.2d 898, 904 (S.D. 1992)) (bracketed material in original text). Therefore, summary judgment was improperly granted in this case.

[¶ 16.] On remand, the trial court should consider whether Eastep received notice of the changes the association claims they properly adopted. While we understand that South Dakota law does not require notice of amendments to bylaws by recordation, the association did regularly record its amendments. It is not unreasonable to assume that Eastep relied on such regular behavior of the association. The July 7, 2001 document was nev-

er filed or recorded. There is nothing in the record suggesting that anyone other than those in attendance of the July 7, 2001 meeting were aware of the document. Surely, some reasonable form of notice to current and prospective owners must be given. The record reflects that Eastep was not made aware of a liquidated damages provision and its assessment until he owed $9,900 in such damages. It is not difficult to conclude that this type of unfair dealing is a factor that has led other states to determine that all such amendments must be recorded.

[¶ 17.] In sum, Eastep must have some notice of the consequences of his actions. This is especially true where he previously obtained a judgment voiding any penalties for noncompliance. While we concede that by purchasing a unit, Eastep agreed to certain restrictions, we do not believe that those restrictions can be imposed on an owner who may be unaware of a liquidated damages provision. It is important to note that under present circumstances, Eastep would not have been unaware from lack of diligence, but from the association's failure to notify him that his reliance on the previous court order was no longer valid.

[¶ 18.] Lastly, we address whether the liquidated damages provisions could be retroactively applied. The issue here is not whether an association might adopt certain provisions that may adversely affect current owners who purchased a unit when no such provisions existed when the owner purchased the unit. Rather, the issue is whether Eastep could be subject to liquidated damages before the amendment existed. On its face, it seems unreasonable that the association could retroactively attach an *automatic* remedy to forbidden conduct where a court order proclaimed that the forbidden conduct had no enforceable *automatic* remedy provision. This is not to say that the forbidden conduct had no remedy whatsoever. Plainly, the master deed contemplates that "damages" may be levied against those who fail to comply with the provisions of the master deed, the bylaws, or amendments. However, under the master deed, the association is charged with proving such damages.

[¶ 19.] Reversed.

[¶ 20.] GILBERTSON, Chief Justice, and SABERS, ZINTER, and MEIERHENRY, Justices, concur.