#24752-rev & rem-JKK

**2008 SD 68**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JOE BERBOS,                                        Plaintiff and Appellee,

    v.

HAROLD KRAGE and GWEN
KRAGE,                                              Defendants and Appellants.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JACK R. VON WALD
Judge

\* \* \* \*

KIMBERLY A. DORSETT of
Richards, Oliver & Dorsett                    Attorneys for plaintiff
Aberdeen, South Dakota                        and appellee.

RICHARD L. RUSSMAN of
Richardson, Wyly, Wise,
  Sauck & Hieb, LLP                          Attorneys for defendants
Aberdeen, South Dakota                        and appellants.

\* \* \* \*

CONSIDERED ON BRIEFS
ON MAY 19, 2008

OPINION FILED **07/16/08**

#24752

KONENKAMP, Justice

[¶1.]        Joseph Berbos purchased real property from Harold and Gwen Krage on a contract for deed.  When the parties disputed ownership of a building encroaching onto land not sold in the contract, Berbos withheld his last payment and brought suit for specific performance.  After a hearing, the circuit court granted summary judgment for Berbos, ruling that the parties intended to convey the entire building.  On appeal, we conclude that because there are genuine issues of fact on the question of intent, the matter must be reversed and remanded for trial.

## Background

[¶2.]        On May 9, 2002, the Krages and Berbos entered into a contract for deed for the sale of certain real estate owned by the Krages in Brown County, South Dakota.  The contract described the property in metes and bounds.  No buildings were mentioned.  The total purchase price was $854,000, to be paid in installments, with the final payment of $173,444.44 due on January 1, 2004.

[¶3.]        Before the last installment became due, a dispute arose between the parties on the ownership of a building located partially on the land conveyed to Berbos in the contract (Lot 1) and partially on the Krages' adjoining property (Lot 2).  Used for hunting purposes, the building is a large steel structure with bedrooms, a game room, bus storage, restrooms, a cleaning room, a shower, and a kitchen.  There is no common wall by which the structure can be separated at the line of encroachment.

[¶4.]        On December 24, 2003, an attorney for Berbos wrote the attorney for the Krages acknowledging that payment of $173,444.44 would be due from Berbos

on January 1, 2004. The letter indicated that a check to the Krages was available for issuance when the Krages provided clear title. A photocopy of the check was included with the letter. In another letter, dated March 22, 2004, the Krages were again informed that Berbos was "willing to deliver" the check "as soon as clear title and possession of the real estate is delivered."

[¶5.] The parties could not resolve their dispute over the building, and, on August 23, 2004, Berbos brought suit for specific performance. Berbos asked the court to compel the Krages to deliver merchantable title, or in the alternative, to reform the deed. Berbos sought a summary judgment. In response, the Krages moved to amend their answer and include an omitted counterclaim for foreclosure. After a hearing, the court granted summary judgment for Berbos. It reasoned that because the Krages did not reserve an interest in any of the buildings located on Lot 1, the intent of the parties was that all buildings, including the encroaching structure, would pass with the conveyance. The Krages were ordered to deliver merchantable title, and Berbos was ordered to pay the Krages fair market value for the portion of Lot 2 the building encroached on.

[¶6.] For their part, the Krages sought accrued interest on the last payment Berbos withheld. Berbos responded that because he offered to make the final payment, the accrual of interest on the obligation was tolled. *See* SDCL 20-5-18. The court denied the Krages' request for interest, concluding that Berbos's tender of payment was an unconditional offer. The court further denied the Krages' motion to amend their answer and submit their omitted counterclaim. On appeal, the Krages assert that the court erred when it granted summary judgment for Berbos

and abused its discretion when it denied their motion to amend their answer and submit an omitted counterclaim.

**Analysis and Decision**

[¶7.] "On appeal, we will affirm summary judgment when the facts and law are clear and no genuine issues of material fact exist." Citibank South Dakota, N.A. v. Schmidt, 2008 SD 1, ¶8, 744 NW2d 829, 832 (citing Bordeaux v. Shannon County Sch., 2005 SD 117, ¶11, 707 NW2d 123, 126). "Motions to amend engage the sound discretion of the trial court; thus decisions to grant or deny will not be disturbed absent a clear abuse of discretion resulting in prejudice to the nonmovant." Prairie Lakes Health Care Sys., Inc. v. Wookey, 1998 SD 99, ¶28, 583 NW2d 405, 417 (citing Ripple v. Wold, 1996 SD 68, ¶12, 549 NW2d 673, 676 (citing Kjerstad v. Ravellette Publications, Inc., 517 NW2d 419, 423 (SD 1994))).

[¶8.] The Krages contend that summary judgment was improperly granted for two reasons: (1) an equitable claim is not "suited for summary disposition," *see* Ahl v. Arnio, 388 NW2d 532, 534 (SD 1986); and (2) there are material issues of fact in dispute over what the parties intended for the disputed building. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). Even though this action sounds in equity, and such cases are not often susceptible to summary judgment, if there are no material issues of fact in dispute, summary judgment may be appropriate. Farm Credit Services of Am. v. Dougan, 2005 SD 94, ¶7, 704 NW2d 24, 27 ("summary judgment

is a preferred method for disposing of any legally inadequate claim") (citing Horne v. Crozier, 1997 SD 65, ¶5, 565 NW2d 50, 52).

[¶9.]     The Krages do not dispute that the contract for deed is silent on whether the buildings on Lot 1 were to be conveyed with the deed. They take issue, however, with the fact that the court "did not reference specific legal authority for the proposition that the absence of a written reservation constitutes the intent to transfer a fixture, or portion thereof, when the fixture is located outside the bounds of the legal description." The Krages further contend that when a portion of a building is not included in the legal description of the land conveyed, the intent of the parties cannot be ascertained solely from the four corners of the contract. Berbos, on the other hand, argues that a reading of several contracts surrounding the parties' agreement together with an understanding of the history of the parties' relationship, provide ample support for a conclusion that everyone intended that all buildings on Lot 1 be sold as part of the overall transaction, including that portion of the structure encroaching on Lot 2.

[¶10.]    In granting summary judgment, the circuit court concluded that, as a matter of law, all the buildings located on Lot 1 were sold under the contract for deed because the deed did not include a reservation by the Krages of an interest in any building. The court then ruled that the Krages intended to sell the entire disputed building, including the part encroaching on Lot 2, based on its reading of the four corners of the parties' contract for deed, the earnest money agreement, and the fact that the Krages did not assert, in response to Berbos's motion for summary judgment, that they intended to retain a portion of the disputed building.

[¶11.]     "Generally, absent a specific reservation in a deed, buildings and other improvements used in connection with realty in such a way as to constitute appurtenances or fixtures pass as a matter of course by the conveyance." N.P., Inc. v. Turboff, 111 SW3d 40, 44 (Tex 2003); *see also* Sheets v. Selden *et al.*, 69 US 177, 17 LEd 822 (1864); Milam v. Coleman, 418 SW2d 329, 331 (TexCtApp 1967); Baldwin v. Breed, 1843 WL 411 (Conn); Van Wagner v. Van Nostrand, 1866 WL 388 (Iowa 1865); Conner v. Coffin, 1851 WL 2098 (NH). Buildings that belong to the grantor, "being part of the land, cannot be reserved by parol when the land is conveyed; the deed conveys them to the grantee, unless the reservation be in writing." Herzog v. Marx, 94 NE 1063, 1064 (NY 1911) (quoting Mott v. Palmer, 1 NY 564, 569 (1848)). Here, the contract for deed contains no reservation, and therefore, the court did not err when it ruled that all the buildings located on Lot 1 passed with the conveyance.

[¶12.]     As to the disputed building not located wholly within Lot 1, we must determine whether the court was correct in ruling that, as a matter of law, the parties intended the entire building to be conveyed under the contract. The court found no issue of material fact in dispute based in part on the four corners of the contract for deed and the earnest money agreement, and in part because "Mr. Krage's responding affidavit does not state that he intended to keep all or part of the building. . . ."

[¶13.]     "Where a portion of a building has not been embraced within the description of the land conveyed by the common owner of all the land covered by the building, and where *it does not clearly appear from the grant that the parties*

*intended the entire building to pass*, the cases hold generally that such grantee has no right of ownership in, or right of possession to, the portion of the building on the adjoining land." Podlesny v. Baranko, 82 PaD&C 281, 284-85 (PA 1952) (emphasis added); *see also* Adams v. Marshall, 52 AmRep 271 (Mass 1884); Whyte v. Builders' League of New York, 58 NE 517, 518 (NY 1900); Griffiths v. Morrison, 12 NE 580, 581 (NY 1887); Baker v. Zingelman, 393 A2d 908, 911 (PaSuperCt 1978) (citing Nestico v. Carnucci, 39 NorthumberlandLJ 39 (1966)). In the contract for deed here, there is no mention of any buildings, let alone the disputed building. Therefore, the garage-office portion situated on Lot 2 is not embraced within the description of the land conveyed, and in accord with the general rule, Berbos has no right to ownership of the portion of the building located on Lot 2. *See Podlesny*, 82 PaD&C at 284-85.

[¶14.]    Despite the fact that Berbos has no *right* to own the portion of the building on Lot 2, the court concluded that there is no material issue of fact in dispute that the parties intended to pass the entire building with the conveyance. As noted earlier, the court remarked that it was relying on the four corners of the earnest money agreement and the contract for deed. These two documents, however, shed no light on the parties' intent with respect to the disputed building. There is no mention of buildings whatsoever in the contract for deed. And, in the earnest money agreement, while there is a phrase "including all buildings therein," this relates to a third party's right to occupy the buildings on Lot 1.

[¶15.]    "Summary judgment is a drastic remedy, and should not be granted unless the moving party has established a right to a judgment with such clarity as

to leave no room for controversy." Richards v. Lenz, 539 NW2d 80, 83 (SD 1995) (citing Jewson v. Mayo Clinic, 691 F2d 405 (8thCir 1982)). Berbos contends that several documents and the history surrounding the parties' transaction support a conclusion that the parties intended to convey the entire building. He further argues that the Krages failed to specifically attest in opposition to summary judgment that they intended to retain all or any portion of the disputed building.

[¶16.]     In his affidavit, Berbos declared that "[a]t no time did I enter into any oral or written agreement with Mr. Krage that he would retain ownership of one half of any rooms in this building. A review of the photographs sets forth that it would be absolutely nonsense and impractical to physically divide a room in a building where those rooms where [sic] completely dependant upon the facilities and building located on Lot 1 for their proper use." In a responsive affidavit, Mr. Krage asserted that Lot 2 "was not subject to the relevant contract for deed and was retained by Harold Krage and inhabited by" the Krages' stepson. Mr. Krage further attested that "prior to the execution of the contract for deed, a steel structure was erected, partially upon the boundary of Lot 1 and Lot 2. . . . Berbos was well aware that the steel building straddled the Lot 1/Lot 2 lines," but "the contract for deed, drafted by Berbos's attorney, Robert Ronayne, made no reference to this fact and was executed by Berbos."

[¶17.]     While the Krages' affidavit does not contain a specific statement that they intended to retain the building in whole or in part, the affidavit does state that they intended to retain all of Lot 2 and that the Krages' stepson occupied Lot 2. These two statements support a reasonable inference, or at least a reasonable

doubt, that the portion of the building located on Lot 2 was intended to be retained by the Krages. *See* St. Paul Fire & Marine Ins. Co. v. Engelmann, 2002 SD 8, ¶15, 639 NW2d 192, 199 ("Not only must the facts not be in issue, but also there must be no genuine issue on the inferences to be drawn from those facts."). From our review of the record, the intent of the parties is not clear. *See Citibank South Dakota, N.A.*, 2008 SD 1, ¶14, 744 NW2d at 834 (quoting S.D. Dept. of Rev. v. Thiewes, 448 NW2d 1, 2 (SD 1989) (citing Wilson v. Great Northern R.R. Co., 83 SD 207, 212, 157 NW2d 19, 21 (1968))). Moreover, when there is reasonable doubt on whether a genuine issue of material facts exists, the doubt should be resolved against the movant. Keystone Plaza Condominiums Ass'n v. Eastep, 2004 SD 28, ¶15, 676 NW2d 842, 847 (citations omitted). Because the matter of intent in this case can only be resolved in a trial, we reverse the grant of summary judgment. *See id.*

[¶18.] On their next point, the Krages assert that the court abused its discretion when it denied their motion to file an amended answer with their omitted counterclaim. Their proposed amendment asserted counterclaims for interest and foreclosure on the contract for deed. Because we reverse the grant of summary judgment, the Krages' motion to amend should be permitted.

[¶19.] With respect to the Krages' request for prejudgment interest, the circuit court found that Berbos made an unconditional offer of payment, tolling the accrual of interest. *See* SDCL 20-5-18. "In the context of a contract for deed, interest on the debt will stop running when the buyer tenders an unconditional offer of payment." Anderson v. Aesoph, 2005 SD 56, ¶27, 697 NW2d 25, 33 (citing Adrian v. McKinnie, 2004 SD 84, ¶14, 684 NW2d 91, 98 (citing Schmidt v. Iowa Beef

Processors, Inc., 347 NW2d 897, 898 (SD 1984))). Nonetheless, "[o]nly an unconditional tender of payment sufficient to discharge the liability will toll interest under SDCL 20-5-18." *Id.* ¶28 (citing *Adrian*, 2004 SD 84, ¶15, 684 NW2d at 98 (citing Dougherty v. Beckman, 347 NW2d 587, 591 (SD 1984))).

[¶20.]     On December 24, 2003, Berbos, through his attorney, acknowledged that payment of $173,444.44 was due on January 1, 2004. His attorney wrote,

> I am enclosing with this letter copies of the following:
>
> 1.  check made payable to Mr. and Mrs. Krage in the amount of $161,444.44; and
>
> 2.  check made payable to my trust account in the amount of $12,000.
>
> . . .
>
> We intend to withhold $12,000 from the final payment under the contract in view of your client's consistent inability or reluctance to sign the documents necessary to provide title to the trailer. At such time, however, as merchantable title is provided to the real estate described in the contract for deed, I am authorized to release the check in the amount of $161,444.44.

In another letter, dated March 22, 2004, counsel reiterated that the final payment was available to the Krages: "You will note my correspondence to you of December 24, 2003, [in] which I included a copy of the check that we are willing to deliver. I remain empowered to deliver that check as soon as clear title and possession of the real estate is delivered."

[¶21.]     With these two letters, Berbos maintains that he tendered an unconditional offer of payment, despite the fact that payment was *conditioned* on the Krages providing clear title and possession of the real estate. According to Berbos, requiring the Krages to provide clear title in return for payment is not a condition sufficient to make the offer *conditional*. Indeed, we have said, "An offer is

unconditional when the amount offered is sufficient to discharge the liability and the payment does not demand something in addition to, or outside of, the original agreement." *Anderson*, 2005 SD 56, ¶28, 697 NW2d at 28 (citing *Adrian,* 2004 SD 84, ¶14, 684 NW2d at 98 (citing *Schmidt*, 347 NW2d at 898)); *see also* Estate of Fisher v. Fisher, 2002 SD 62, ¶28, 645 NW2d 841, 849.

[¶22.]     We conclude that the letter with the photocopied check was insufficient under SDCL 20-5-18 because it proposed to pay the Krages $12,000 less than the total obligation.  The check was for $161,444.44, and Berbos's total obligation was $173,444.44.  *See Dougherty*, 347 NW2d at 591 (tender was not for full obligation, so insufficient).  "'[T]ender' is generally defined as an unconditional offer of payment consisting in the actual production of a sum not less than the amount due on a specific debt or obligation." *Adrian,* 2004 SD 84, ¶10, 684 NW2d at 96 (citation omitted).  Because this offer fails to satisfy SDCL 20-5-18, the court erred when it concluded that the accrual of interest was tolled.

[¶23.]     Reversed and remanded.

[¶24.]     GILBERTSON, Chief Justice and SABERS, ZINTER, and MEIERHENRY, Justices, concur.