KERN, Justice
(concurring in part and dissenting in part).
[¶ 43.] To the extent that the issue regarding the admission of Dr. Laughery’s *620 affidavit is properly preserved for review,[11] I concur with the majority that the circuit court properly admitted the affidavit. As to the remaining issues presented by the Karsts, I respectfully dissent.

Jury Instruction 20

[¶44.] While it is true that each sentence of Instruction 20 is a correct statement of law, it should not have been given for several reasons. First, in order to give this type of instruction, the moving party must make an initial showing that the facts of the case comport with the requirements of comment k of the Restatement (Second) of Torts § 402A. Second, Instruction 20 did not correctly define for the jury the necessary standard to determine whether the product was unreasonably dangerous. This standard is set forth in the consumer-expectation test. Finally, the instruction as given was a confusing conglomeration of legal principles that did little to guide the jury in fairly analyzing the complex claims presented.
[¶ 45.] The first sentence of Instruction 20 states, “A product can be dangerous without being unreasonably dangerous.” The notion that “[a] product can be dangerous without being unreasonably dangerous” is derived from the Restatement (Second) of Torts § 402A, comment k.[12] Cmty. Television Servs., Inc. v. Dresser Indus., Inc., 435 F.Supp. 214, 216 (D.S.D.1977), aff'd, 586 F.2d 637 (8th Cir.1978); see also Am. L. Prod. Liab. 3d § 17:34 (“Comment k 'indicates that a product can be dangerous without being ‘unreasonably’ dangerous.” (citing Kunnemann v. Janssen Pharm. Prods., L.P., 2008 WL 5101116 (N.D.Ill.2008) (applying Illinois law); Cmty. Television Servs., 435 F.Supp. 214 (applying South Dakota law); Huff v. Elmhurst-Chi. Stone Co., 94 Ill.App.3d 1091, 50 Ill.Dec. 453, 419 N.E.2d 561 (1981))). Comment k recognizes that some products are “incapable of being made safe for their intended and ordinary use” and carves out an exception to strict liability so long as the product is “properly prepared and accompanied by proper directions and warning[s].” Restatement' (Second) of Torts § 402A, cmt. k. A comment k instruction is an affirmative defense. Hill v. Searle Lab., a Div. of Searle Pharm., Inc., 884 F.2d 1064, 1068 (8th Cir.1989). Thus, to avail themselves of a comment k instruction, a defendant must show “that the product is incapable of being made safe; that the product was properly prepared and marketed; and that the product was accompanied by a proper warning.” Am. L. Prod. Liab. 3d § 17:34 (citing Amore v. G.D. Searle & Co., 748 F.Supp. 845 (S.D.Fla.1990) (applying Florida law); Kline v. Pfizer, Inc., 2008 WL 4787577 (E.D.Pa.2008) (applying Pennsylvania law); White v. Wyeth Labs., Inc., 40 Ohio St.3d 390, 533 N.E.2d 748 (1988)).
[¶46.] Defendants, in this case, failed to make such a preliminary showing. Moreover, it was undisputed that’the prod *621 uct was capable of being designed 'in' a safer fashion. The evidence at trial established that Shur had redesigned the'system exposing the spline so that it was accessible for conversion. The' alternative design was safer for the user, more fun'c-tional and less expensive. As such; Defendants were not entitled to a comment k instruction.
[¶ 47.] Second, the instruction failéd to provide the correct standard to define an unreasonably dangerous product. Defendants argue that the’ law set forth in Instruction 20 was derived from the Restatement (Second) of Torts § 402A, comment i. However," comment i specifically provides the appropriate standard for determining whether a product is unreasonably dangerous — the standard-which is lacking in Instruction 20. Comment i -states that for a product to be unreasonably -dangerous, it “must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the. ordinary knowledge common, to the community as to its characteristics.”. Restatement (Second) of Torts § 402A, cmt. i. This standard, known as the “consumer-expectation test,” was not substantially contained within Defendants’ .Instruction 20.
[¶ 48.] • The circuit Court, in attempting to correctly instruct the jury, was placed in an untenable situation in light of the confusion caused by our decision in Kolcraft, 2004 S.D. 92, 686 N.W.2d 480. In Kol-cmft, this Court reviewed the following jury instruction: .
A product is in a defective condition and unreasonably dangerous to the user if. it is not reasonably fit for the ordinary and reasonably foreseeable purposes for which it was sold or manufactured and expected to be used. [ (consumer-expectation test) ].
A product is in a- defective condition unreasonably dangerous to the user if it could have been designed to prevent a foreseeable harm without significantly hindering its function, or increasing its price. [ (risk-utility1 test) ].
A product can be dangerous - without being unreasonably dangerous. Even if a product is defective in some manner, you must- find that the defect renders the product “unreasonably”' dangerous. A product is not in a defective or unrea~ sohably dangerous condition merely because it is possible to be injured while using it. [ (Instruction 20 herein) ].
Id. ¶ 28, 686 N.W.2d at 444-45.
[¶ 49.] In determining whether the Kolcmft jury was correctly instructed, we held that the first two paragraphs of the instruction gave conflicting definitions of a defective product. Kolcraft, 2004 S.D. 92, ¶ 29, 686 N.W.2d at 445. We reversed and remanded with instructions to frame the two paragraphs in the disjunctiye. Id. We did not discuss or endorse the third paragraph of the instruction. See id. The Kolcmft court noted that the plaintiff argued that “the ‘consumer expectation’ test was inappropriate, in a defective design case.” Id. ¶ 28 n. 8. We declined to consider the issue because it was raised for the first time in a reply brief. Id.
[¶ 50,} . Our decision in Kolcmft treats as, mutually exclusive the risk-utility" test advanced by Karsts in Instruction 19, and the consumer-expectation test ¡advanced by Defendants, albeit in an inaccurate form, in Instruction' 20. Id. ¶ 29," 686 N.W.2d at 445. Yet we also require á plaintiff to prove that a product is both defective and unreasonably dangerous. E.g., Peterson, 400 N.W.2d at 912. The clifficulty with our position in Kolcmft is that the only provision in the Restatement. (Second) of Torts § 402A ‘that defines an unreasonably dangerous product is the consumer-expecta *622 tion test, and we have said that it cannot be given with the risk-utility test. See Restatement (Second) of Torts § 402A, cmt. i.
[¶ 51.] Accordingly, we should take this opportunity to consider the current state of our strict products liability jurisprudence. It is clear from the arguments of counsel that our sole reliance on the outdated principles contained in the Restatement (Second) of Torts § 402A is no longer workable. What is not so clear is where, precisely, South Dakota stands on formally adopting the risk-utility test as the exclusive test to be used in strict products-liability claims. See Robinson v. Brandtjen & Kluge, Inc., 500 F.3d 691, 696 n. 2 (8th Cir.2007) (“It is unclear whether South Dakota has adopted, or would adopt, the so-called ‘risk-utility test,’ in addition to the consumer-expectations test of section 402A, for determining the existence of a defective condition”); Branham v. Ford Motor Co., 390 S.C. 203, 701 S.E.2d 5, 14 n. 13 (2010) (categorizing South Dakota as “an explicit either-or option” relating to risk-utility or consumer expectations (citing Kolcraft, 2004 S.D. 92, 686 N.W.2d 430)); N. Star Mut. Ins. v. CNH Am. LLC, 2014 WL 897023 (D.S.D.2014) (applying South Dakota law and using the risk-utility test).
[¶ 52.] The Restatement (Third) “adopts a reasonableness (‘risk-utility balancing’) test as the standard for judging the .defectiveness of product designs ... [T]he test is whether a reasonable alternative design would, at reasonable cost, have reduced the foreseeable risks of harm posed by the product and, if so, whether the. omission of the alternative design ... rendered the product not reasonably safe.” Restatement (Third) of Torts: Prod. Liab. § 2, cmt. d.
A broad range of factors may be considered in determining whether an alternative design is reasonable and whether its omission renders a product not reasonably safe. The factors include, among others, the magnitude and probability of the foreseeable risks of harm, the instructions and warnings accompanying the product, and the nature .and strength of consumer expectations regarding the product, including expectations arising from product portrayal and marketing.[13]
Restatement (Third) of Torts: Prod. Liab. § 2, cmt. f. The specific adoption of'these tenets would bring clarity and stability to our strict products-liability law. It would also provide badly needed direction to the bench and bar as to the correct standards to apply. Further, we would be joining the majority of states, which have fully shed the old consumer-expectation test for the more modern, revised risk-utility test as defined in the Restatement (Third).[14] See Branham, 701 S.E.2d at 14 n. 12, *623 (citing cases from the several states that “exclusively employ a risk-utility test.”)
[¶ 53.] Because, the majority opinion has declined to adopt the risk-utility test as set forth in the Restatement (Third) as its exclusive test in strict products-liability claims for design defect, this discussion must wait for another day. In the interim, South Dakota law requires the plaintiff to prove that a product is both defective and unreasonably dangerous. An instruction that substantially complies with the consumer-expectation test must be given to meet the required “unreasonably dangerous” element. Although Kolcraft purports to allow an election between the risk-utility test or the consumer-expectation test, the risk-utility test requires consideration of consumer expectations under both the Restatement (Second) and (Third) of Torts.[15] Instructions on both the risk-utility test and consumer-expectation test must be given to correctly instruct the jury. To the extent that Kolcraft is inconsistent with this approach it should be overruled.
[¶ 54.] Instruction 20 should not be given. It is a conglomeration of a remark made in reference to comment k of the Restatement (Second) § 402A, supra ¶46 a paraphrased sentence from the Restatement (Third) of Torts: Prod. Liab. § 2, comment a; and a cherry-picked portion from a jury instruction given in Wilson v. General Motors Corp., 311 N.W.2d 10, 13 (N.D.1981), which excludes the first-half of the instruction that originally contained the full consumer-expectation test. “Jury instructions should not be patched together from snippets of appellate opinions taken out of context but should rely first on the language of the statute.” 75A Am. Jur. 2d Trial § 958. Instruction 20 was not discussed in Kolcraft and although the majority opinion has not found its use to constitute reversible error, neither has its use received a glowing endorsement.
[¶55.] As to the present case, '“[n]o court has discretion to give incorrect, misleading, conflicting, or confusing instructions.” State v. Whistler, 2014 S.D. 58, ¶ 13, 851 N.W.2d 905, 910 (quoting State v. Zephier, 2012 S.D. 16, ¶ 9, 810 N.W.2d 770, 772). However, “[t]o constitute reversible error, an instruction must be shown to be both erroneous and prejudicial, such that ‘in all probability [it] produced some effect upon the verdict and [was] harmful to the substantial rights of a party.’ ” Id. (quoting State v. Cottier, 2008 S.D. 79, ¶7, 755 N.W.2d 120, 125). The Karsts were prejudiced by Instruction 20.
[¶ 56.] Instruction 20 failed to provide an appropriate standard by which the jury could judge a dangerous product from an unreasonably dangerous product. The absence of an appropriate standard in Instruction 20 invited misleading and confusing arguments from Defendants, including contentions that the tarp system was not unreasonably dangerous because Richard continued to use the tarp after the accident and that Defendants were unaware of any other accidents or hear misses involving the tarp system. It: also paved the way for the following compare/contrast argument with unavoidably unsafe products, specifically referencing Instruction 20:
If you think about this, there are a lot of unsafe products. Things are just dangerous. Knives, guns, your iron, anything with electric, a heating element, the cars you drive here every day, *624 There’s danger in all sorts of equipment. But something being dangerous or capable of causing injury is not the same thing as- it being — is as a thing being defective. That’s an entirely different notion, and it’s [Karsts’] burden to establish that in this case.
Because Instruction 20 was both erroneously given in its present form and prejudicial, I would reverse and remand for a new trial.
Summary Judgment — Failure-to-~Wam
[¶ 57.] I' also disagree that summary-judgment was appropriate on Karsts’ failure-to -waim claims. “Summary judgment is a drastic remedy, and should not be granted unless the moving party has established a right to a judgment with such clarity as to leave no room for controversy.” Donald Bucklin Constr. v. McCormick Constr. Co., 2013 S.D. 57, ¶31, 835 N.W.2d 862, 869 (quoting Berbos v. Krage, 2008 S.D. 68, ¶15, 754 N.W.2d 432, 436). “Using summary judgment to dispose of claims that have ample evidence and questions for the jury goes beyond our repeatedly admonished use of summary judgment.” Burley, 2007 S.D. 82, ¶52, 737 N.W.2d at 413 (Sabers, J., dissenting).
[¶ 58.] In relation to their inadequate warning claim, Karsts presented a genuine issue of material fact as to whether Richard read the owner’s manual for the tarp system. When the tarp system malfunctioned, the first, thing Richard did was check the electric systems and then the motor, consistent with the procedure contained in the owner’s manual.for troubleshooting. After -this failéd to rectify the problem, a witness observed Richard climb onto the trailer, look at the tarp system, and then come down and read something.[16] When he was done reading, Richard asked for some tools and proceeded to try to convert the tarp ’-system from electric to manual use. This was the riéxt logical step as set forth in the owner’s manual. In addition, Karsts produced evidence that it was customary for Wilson Trailers to provide an owner’s manual along with the tarp system and encourage customers to read the information. Karsts’ expert opined that Richard was a responsible person and if “given adequate information, adequate warnings, he would have .complied with them.” With the evidence Karsts presented, there could be a reasonable difference of opinion in the interpretation of the facts, and summary judgment was not appropriate. See Hamilton v. Sommers, 2014 S.D. 76, ¶ 39, 855 N.W.2d 855, 867 (“Causation is generally a question of fact for the jury except when there can be no difference of opinion in the interpretation of the facts.” (quoting Weiss v. Van Norman, 1997 S.D. 40, ¶ 13, 562 N.W.2d 113, 116)).
[¶59.] I reach the same result as to summary judgment on Karsts’ inadequate placement claim. There was a warning label on the rear flex arm of the tarp system indicating that it was .under spring tension. But the label was located at the base of the rear flex arm, several feet below the roll sleeve where the tension was actually held and where it was necessary to perform the work to convert the tarp system from electric to manual use. In Dr. Laughery’s affidavit, he indicated that:
*625 5. One of the purposes of warning is to get people to think about the right' issue at thé right time. This means that the warning néeds to be appropriately positioned and placed on the proddct to be effective when needed. - A warning in a manual is not necessarily going to be as effective as a warning on the product which is encountered at the time- of use.
6. In this case it would have been appropriate for a warning relating to the hazards of converting the tarp from ■electric to manual use-to [be] placed up on [sic] the sleeve that covered- the spline that needed to bé accessed during conversion. Ah appropriately designed warning positioned on the sleeve is more likely to be effective because it is- going to be encountered at the time of conversion. ■ . ¡
If presented with a proper warning system, ■ it is my Opinion that Mr. Karst would have likely followed the warnings and instructions provided.
Thus, Dr. Laughery opined that warnings need to be appropriately positioned; that it would have been appropriate for a warning label to be placed on the roll sleeve of the rear flex arm; ‘and that had the warning system been proper, Mr. Karst would have followed it.
[¶ 60.] The majority opinion parses words about Dr. Laughery’s use- of the term “appropriate” and finds his “statement about what might be an appropriate placement is not-equivalent to the requisite opinion” — the requisite opinion being that the placement of the warning label “was actually inadequate.” See supra ¶ 29. Without need to turn to the dictionary meaning of the word “appropriate,” we can easily consider the context of the situation. Thé salient issue in Karsts’ inadequate warning claim is 'whether there shouíd have been a warning label on the roll sleeve. Dr. Laughery was asked to give his expert opinion regarding the placement of- the warning label. It was his opinion that it would have been appropriate for a warning label to be placed on the roll sleeve. His testimony fulfilled the requirements of SDCL 19-19-702 and should have been admitted.[17]

'Assumptioiv-.of-the-Risk

[¶ 61.] Finally, Defendants were not entitled to an instruction on assumption of the risk. “[A] person assumes the risk of injury when the person: ‘(1) [has] actúal or constructive knowledge of the risk; (2) appreciate^] its character; and (3) voluntarily accept[s] the risk, with the time, knowledge, and experience to make an intelligent choice.’” Phatty McGees, 2008 S.D. 115, ¶ 13, 758 N.W.2d at 758 (quoting Ray, 1998 S.D. 40, ¶11, 576 N.W.2d at 898). “Failure to establish any one of the ... three criteria [is] fatal to [an assumption-of-the-risk] defense[.]” Westover v. E. River Elec. Power Coop., Inc., 488 N.W.2d 892, 901 (S.D.1992). As an initial matter, the majority opinion foreclosed any actual knowledge Richard may have had of the risk when it accepted Karsts’ concession that “there was no evidence [Richard] knew of the danger of converting from electric to manual with the tarp open” as a basis to deny-a presumption of due care. See supra ¶22. That leaves constructive knowledge.
[¶ 62.] Constructive knowledge is “imputed if the risk is so plainly observable that ‘anyone of competent faculties could be charged with knowledge of it.’ ” Goepfert v. Filler, 1997 S.D. 56, ¶8, 563 N.W.2d *626 140, 143 (quoting Westover, 488 N.W.2d at 901). Karsts offered the following expert opinion from Dr. Laughery:
The hazards associated with the electric tarping system failing while the tarp is in the open position and the spring arm is under tension are not open and obvious. It cannot be assumed that the hazards and potential consequences will be known or determined by the product consumer/user. Indeed, the hazards are technical in nature, having to do with forces, tensions, etc.
(Emphasis added.) Moreover, Star’s lead engineer testified at trial that in order to tell if the torsion spring was under tension, one must know “what to look for.” Tom Heinen, a twenty-year employee of the grain elevator where the accident occurred, testified that he did not know it was dangerous to remove the flex arm in the manner Richard did and that he did not anticipate that there would be tension on the flex arm. He further testified that he thought that when Richard removed the flex arm, it would “be in the loose position.” Unlike the situation in Goepfert, where the plaintiff jumped from a moving car, the risk in this case was not plainly observable.
[¶ 63.] For the same reasons, Richard could not have appreciated the risk associated with removing the roll sleeve. See Thomas v. St. Mary’s Roman Catholic Church, 283 N.W.2d 254, 260 (S.D.1979) (“[A] plaintiff must only be held to assume the risk he appreciates, not the risk [that] he does not”) Defendants produced no evidence that Richard knew of the dangerously high level of tension he would encounter while converting the open tarp from electric to manual mode. The extent of this danger was not plainly observable and of the type that any reasonably competent person could be charged with knowledge of the risk.
[¶ 64.] Karsts’ substantial rights were also prejudiced by the assumption-of-the-risk instruction. The majority opinion relies on the special verdict form and the sequential order in which it was formatted to conclude that the jury did not consider assumption of the risk. However, the jury sat through a 12-day trial wherein Defendants wove their defense that Richard assumed the risk throughout their evidence — the same risk of which he had no knowledge. For example, Defendants argued that Richard assumed the risk by holding onto the flex arm while he was removing it. Defendants then proposed several theories about how the flex arm could have been removed more safely (i.e. holding the flex arm down during removal, tying the flex arm down with rope, using a ladder to approach the flex arm on the side instead of behind it), all the while knowing that Karsts could not rebut with their failure-to-wam evidence. This evidence would have informed the jury that neither the user manual nor the warning label mentioned the need to use a separate platform or tie back the spring arm during repair. All of this culminated in Defendants’ closing argument with the statement, “I’m advocating for Shur-Co and asking you to find Mr. Karst assumed the risk.” It would be naive to disregard the real-world impact that this would have had on the jury.
[¶ 65.] Karsts’ inability to present their evidence of the inadequate warnings to rebut the affirmative defense further compounded the error and the prejudice. I would reverse and remand to allow Karsts to present their evidence for the jury’s consideration under a correct set of instructions.

. Although Shur argued in its brief that Dr. Laughery’s affidavit was improperly admitted, it failed to file a notice of review. "This Court has consistently held that failure to comply with the notice of review requirements results in a waiver." A.L.S. Props., Silver Glen v. Graen, 465 N.W.2d 783, 787 (S.D.1991).

. A classic example of this type of product is the vaccine for the Pasteur treatment of rabies, which not uncommonly leads to very serious and 'damaging consequences when it is injected. Since the disease itself invariably leads to a dreadful death, both the marketing and the use pf the vaccine are fully justified, notwithstanding the unavoidable high degree of risk which they involve. Such a product, properly prepared, and accompanied by proper directions and warning, is not defective, nor is it unreasonably dangerous,
Restatement (Second) of Torts § 402A, cmt. k.

. The Restatement (Third) of Torts: Prod, Liab. .§ 2, comment g, instructs that "although consumer expectations do not constitute an independent standard for judging the defectiveness of product designs, they may substantially influence or even be ultimately determinative on risk-utility balancing in judging whether the omission of a proposed alternative design renders the product not reasonably safe.” For an excellent discussion on the role of consumer-expectations in risk-utility balancing, see Wright v. Brooke Grp. Ltd., 652 N.W.2d 159, 170-71 (Iowa 2002).

. Another feasible option may be adopting the modified consumer-expectation test set forth in Potter, 694 A.2d at 1330-35. The modified consumer-expectation test is advantageous in that it does not require a reasonable alternative design in all cases and permits risk-utility balancing in appropriate cases such as the one before us now. Id. at 1329-35.

. The Restatement (Second) requires the plaintiff to prove that the product is both defective and unreasonably dangerous. The unreasonably dangerous element invokes the consumer expectation test for the proper standard. See Restatement (Second) of Torts § 402A, cmt. i. Likewise, the Restatement (Third) looks - to consumer expectations as part of its balancing test. See Restatement (Third) of Torts: Prod. Liab. § 2(b), cmt. g.

. Defendants argue that the owner’s manual was not located at the scene of the accident so Richard could not have referenced it. This is not dispositive as there was no evidence that anyone looked for the owner’s manual until three and one half years after the accident. The Karsts' owner's manual was never located. Further, a reasonable juror could certainly have inferred that the item he took the • time to get off the truck to read would be something helpful to him — the manual.

. To be admissible, Dr. Laugheiy’s opinion must have assisted the jury in understanding the evidence or determining a factual issue, been based upon sufficient facts or data and been the product of reliable principles and methods, and Dr. Laughery must have applied the principles and methods reliably to the facts of the case. SDCL 19-19-702.