# IN THE COURT OF APPEALS OF IOWA

No. 17-0939
Filed November 7, 2018

**LAUREN SHERRICK,**
Plaintiff-Appellant,

**vs.**

**OBSTETRICS & GYNECOLOGY SPECIALISTS, P.C.,**
Defendant-Appellee.

_____

Appeal from the Iowa District Court for Scott County, Mark D. Cleve, Judge.

A patient appeals a malpractice verdict in favor of her medical providers, claiming two evidentiary errors by the district court. **AFFIRMED.**

James K. Weston II of Tom Riley Law Firm, Iowa City, for appellant.

Robert V.P. Waterman, Jr. and Trista M. Beise (until withdrawal) of Lane & Waterman, LLP, Davenport, for appellee.

Heard by Tabor, P.J., and Mullins and Bower, JJ.

**TABOR, Presiding Judge.**

This appeal arises from Lauren Sherrick's medical malpractice suit against Obstetrics & Gynecology Specialists, P.C.[1]  Following a five-day trial, the jury returned a verdict finding the OB/GYN clinic was not negligent in treating Sherrick. On appeal, Sherrick challenges two evidentiary rulings from that trial.  We find no abuse of discretion in the first ruling and no prejudice from the second.  As a result, we affirm the verdict.

## I.    Facts and Prior Proceedings

In July 2013, Sherrick began receiving prenatal care from midwives at the OB/GYN clinic in Davenport.  Ten weeks into her pregnancy, Sherrick visited the OB/GYN clinic for an ultrasound appointment.  The sonographer performed a transabdominal ultrasound.[2]  Dr. Kenneth Naylor interpreted Sherrick's ultrasound following her appointment and reported no apparent abnormalities.

The next month, Sherrick returned to the OB/GYN clinic twice—complaining of nausea, vomiting, fatigue, inability to urinate, and weight loss.  A midwife prescribed medication for Sherrick's symptoms.  At first Sherrick reported improvement.  But her condition quickly deteriorated.  Sensing "something wasn't right," Sherrick sought emergency care at Genesis Medical Center in early September 2013.

Genesis admitted Sherrick for overnight monitoring.  She underwent testing and received intravenous (IV) fluids and medication.  Dr. Jessica Sandmeier

---

[1] For brevity's sake, we will refer to the defendant as the OB/GYN clinic.

[2] Dr. Margaret Smollen testified a transabdominal ultrasound involves using a transducer on the woman's abdomen and is "much more comfortable than a transvaginal ultrasound" which "involves inserting a large probe into the woman's vagina."

oversaw Sherrick's treatment throughout the night.  When Dr. Carolyn Martin arrived for her shift the following morning, she reviewed Sherrick's chart and conferred with Dr. Sandmeier.  The two doctors believed Sherrick might be suffering from HELLP[3] syndrome.  They discussed the risk of a partial molar pregnancy.[4]  Dr. Martin agreed to review the results of an ultrasound scheduled that morning and follow up with Sherrick accordingly.

Later that morning, Dr. Martin learned Sherrick's ultrasound revealed a partial molar pregnancy.  Dr. Martin shared the difficult news with Sherrick.  The doctor explained her pregnancy was not "viable" and had to be terminated for her health.  After Dr. Martin outlined her treatment options, Sherrick chose transfer to University of Iowa Hospitals and Clinics (UIHC).  An ambulance transported Sherrick there.  Upon arrival, Sherrick met with her treating physician, Dr. Abbey Hardy-Fairbanks.  After the doctor terminated her pregnancy, Sherrick continued to receive care at UIHC for three days.

Believing the OB/GYN clinic was negligent in failing to timely diagnose her partial molar pregnancy, Sherrick filed a malpractice lawsuit in July 2015.  Sherrick focused on the OB/GYN clinic's decision to perform a transabdominal rather than a transvaginal ultrasound at the ten-week mark of her pregnancy and its failure to conduct more frequent urinalysis during August 2013.  Sherrick alleged a transvaginal ultrasound would have revealed fetal abnormalities, increasing the

---

[3] Midwife Caron Jones testified HELLP stands for hemolysis, elevated liver enzymes, low platelets count "a condition that can be set off by an abnormal pregnancy."  Dr. Martin described HELLP syndrome as "a more severe variant of preeclampsia."  The doctor testified it only occurs during pregnancy and can affect kidney and liver functions.
[4] Sherrick's appellate brief describes a partial molar pregnancy as "a genetically abnormal pregnancy that cannot result in viable birth, but has significant physiological effects on the mother."

probability of an earlier diagnosis. And urinalysis would have alerted OB/GYN physicians to the presence of ketones, a sign of hyperemesis that points to a potential partial molar pregnancy. Sherrick asserted had the OB/GYN clinic treated her in accordance with the standard of care, medical providers would have discovered her condition earlier, and the resulting physiological effects would not have been as significant.

After Sherrick sued, the parties timely disclosed their expert witnesses. Sherrick named midwife Caron W. Jones as an expert, and added:

> Plaintiff intends to rely on opinions expressed by her physicians at [UIHC]. These witnesses are not retained experts, but are Plaintiff's treating physicians and will offer opinions formed in the course of their treatment of Plaintiff. In addition, Plaintiff reserves the right to utilize additional treating health care providers who may or will testify regarding issues of informed consent, standard of care, causation and damages.

The OB/GYN clinic designated several expert witnesses: Drs. Sandmeier, Margaret Smollen, Kenneth Naylor, and Carolyn Martin, as well as certified nurse midwives Pam Thorpe and Cindy Ramsay.

The parties conducted depositions three months before trial. While deposing treating physician Dr. Hardy-Fairbanks, Sherrick's counsel asked: "Again, either in your practice or in your teaching responsibilities, are there differences between—you mentioned transvaginal or transabdominal ultrasound— different times when you would use those different procedures?"

Defense counsel objected on relevance grounds.[5] Dr. Hardy-Fairbanks answered: "The general practice in early, early pregnancy, we use vaginal

---

[5] Evidence is relevant if it has any tendency to make a fact of consequence in the action more or less probable than it would be without the evidence. Iowa R. Evid. 5.401.

ultrasound just because logistically, the uterus is in a position that makes it harder for the ultrasound waves to get there, and then when the uterus is bigger, we use transabdominal, in general."

The jury trial started in mid-May 2017. Sherrick presented five witnesses, including Dr. Hardy-Fairbanks, through deposition testimony. Before the jury heard the evidence, the district court asked if "[e]ither party ha[d] anything further they wish[ed] to say in regards to the objections lodged" during the doctor's deposition.

Defense counsel repeated the relevance objection, explaining he "objected on relevance for the reason that [the different times to use transvaginal or transabdominal ultrasounds] wasn't an issue that presented as it relates to [P]laintiff's care at [UIHC]." Sherrick's attorney maintained the ultrasound opinion was relevant to the plaintiff's theory of the case and the treating physician's opinion was based on her education and experience.

Defense counsel pounced on the difference between a designated expert and a treating physician like Dr. Hardy-Fairbanks. In the defense view, the plaintiff had to disclose the treating physician's expert opinion if it fell outside the opinions she developed as a result of the treatment in this particular case. Defense counsel argued: "In this case the objection to relevance is applicable because [the ultrasound opinion] was totally irrelevant to her care of this patient at the University Hospitals."

The district court sustained the objection. The parties read the deposition of Dr. Hardy-Fairbanks into the record for the jury, omitting the portion of her

testimony describing the "general practice" of using vaginal ultrasounds in "early, early pregnancy."

After Sherrick's case, the defense called Nurse Ramsay as an expert witness. Sherrick's attorney objected when defense counsel asked about the timing of Sherrick's urinalysis during her overnight stay at Genesis. Sherrick's counsel asserted the nurse's testimony was "beyond the scope of the disclosed opinions of this witness." The district court excused the jury and heard arguments on the issue.

Sherrick's counsel insisted the testimony was inadmissible because defense pretrial disclosures did not say Ramsay would be "interpreting specifics regarding the labs at Genesis Hospital."

Defense counsel responded Ramsay's testimony was proper because the expert disclosures, plus her deposition testimony, made clear her opinion would include the standard of care in urinalysis and whether ketones remain in the urine if an individual has hyperemesis. Defense counsel argued,

> I think this is pretty clearly within the fair scope of her pretrial disclosures to ask her about ketones, electrolytes and the other signs relating to lab work done at [the OB/GYN clinic] are inconsistent with plaintiff's theory that she was suffering from hyperemesis or dehydration at the time of her admission.

The district court overruled Sherrick's objection, and counsel for the OB/GYN clinic questioned Nurse Ramsay about the timing of Sherrick's urinalysis at Genesis.

After four days of hearing evidence, the jury returned a verdict finding the OB/GYN clinic was not negligent. Seeking a new trial, Sherrick appeals two

evidentiary rulings—the first excluding a portion of Dr. Hardy-Fairbanks's testimony and the second admitting all of Nurse Ramsay's testimony.

## II.     Scope and Standard of Review

We review evidentiary rulings for an abuse of discretion.  *Anderson v. Khanna*, 913 N.W.2d 526, 535 (Iowa 2018).  A district court abuses its discretion when its ruling rests on unreasonable or untenable grounds.  *Id.* at 536.  Grounds are unreasonable or untenable when "based on an erroneous application of the law."  *In re Tr. No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013).

## III.    Analysis

### A.     Testimony of Dr. Hardy-Fairbanks

Sherrick first attacks the district court's exclusion of an opinion from Dr. Hardy-Fairbanks on the standard of care for performing ultrasounds early in pregnancy.  Dr. Hardy-Fairbanks treated Sherrick at UIHC, but Sherrick did not certify her as expert witness under Iowa Code section 668.11.

In her deposition, the doctor responded to questions from Sherrick's counsel about the use of ultrasound to diagnose partial molar pregnancies. Counsel asked when the doctor would use transvaginal versus transabdominal ultrasound "either in her practice or teaching responsibilities."  Over the relevance objection, Dr. Hardy-Fairbanks responded: "[T]he general practice in early, early pregnancy" is to use "vaginal ultrasound" and when the "uterus is bigger, we use transabdominal, in general."

After hearing the parties' expanded arguments at trial, the district court excluded that one-line response from the treating physician's deposition.  On appeal, Sherrick contends the testimony was relevant in showing the reasonable

standard of care in early pregnancy.[6]  She also argues the treating physician could opine on the standard of care, without being disclosed as an expert under Iowa Rule of Civil Procedure 1.508, if the opinion related to the treatment of the patient. *See Hansen v. Cent. Iowa Hosp. Corp.*, 686 N.W.2d 476, 484 (Iowa 2004) (allowing expert testimony about causation without disclosure because doctor formed his opinion "as a *treater*").

When the district court sustains an objection during trial, we will uphold the ruling "if the evidence could be held inadmissible on any theory, whether urged in the objection or not." *Porter v. Iowa Power & Light Co.*, 217 N.W.2d 221, 231 (Iowa 1974); *see also DeVoss v. State*, 648 N.W.2d 56, 62 (Iowa 2002).

Here, the ultrasound opinion offered by Dr. Hardy-Fairbanks was inadmissible because it did not relate to the care she provided Sherrick upon her arrival at UIHC.  Unlike the treating physician in *Hansen*, Dr. Hardy-Fairbanks was not offering an opinion on causation developed during patient care.  *See* 686 N.W.2d at 482.  And the remainder of her deposition did not show she formed her view on the use of ultrasounds while treating Sherrick.[7]  The treating physician's opinion on the standard of care was expert testimony, and thus improper absent

---

[6] Sherrick's malpractice action focused on whether the OB/GYN clinic was negligent in failing to diagnose her partial molar pregnancy at an earlier date.  A vital question was the propriety of performing a transabdominal rather than a transvaginal ultrasound at her ten-week appointment.  The standard of care in early-pregnancy ultrasound practices was "of consequence" in Sherrick's suit.  *See Plowman v. Fort Madison Cmty. Hosp.*, 896 N.W.2d 383, 401 (Iowa 2017) ("The traditional elements of a medical negligence action are (1) an applicable standard of care, (2) a violation of this standard, and (3) a causal relationship between the violation and injury sustained." (citing *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 718 (Iowa 2001)).  Thus, Dr. Hardy-Fairbanks's excluded opinion was relevant to a consequential fact.

[7] As defense counsel points out on appeal, Sherrick received treatment from Dr. Hardy-Fairbanks more than seven weeks after the OB/GYN clinic performed the transabdominal ultrasound at issue.

compliance with the required disclosures.[8]  *See id.* at 482; *see also* 8 Tom Riley & Peter C. Riley, *Iowa Practice Series: Civil Litigation Handbook* § 9:6 (2018) ("Had the treating physician opined as to the standard of care of a [d]efendant, he would have to be designated under § 668.11 since such an opinion would not have been included in his care of the [p]laintiff.").  The district court did not abuse its discretion in excluding one sentence from the deposition of Dr. Hardy-Fairbanks.

## B.        Testimony of Nurse Ramsay

Sherrick next challenges the admission of testimony from an expert witness for the OB/GYN clinic.  Sherrick maintains the district court should excluded Nurse Ramsay's testimony about the timing of Sherrick's urinalysis based on the expert's review of the Genesis records because that interpretation exceeded the scope of the OB/GYN clinic's pretrial disclosure.  Nurse Ramsay testified she would have expected Sherrick's urine to show ketones at the hospital if the patient had been suffering from hyperemesis at the time of her clinic appointment a few days earlier.[9]  But the Genesis test showed Sherrick's urine was negative for ketones.  From these facts, the defense argued even if the clinic had obtained and tested Sherrick's urine earlier, "that would not have led to an earlier diagnosis of a partial molar pregnancy or changed her ultimate outcome."

---

[8] In an alternative argument, Sherrick suggests the fact that Dr. Hardy-Fairbanks gave a deposition three months before trial eliminates any surprise to the opposing party, negating the need for disclosure.  But our supreme court rejected a similar argument in *Cox v. Jones*, 470 N.W.2d 23, 25 (Iowa 1991).  Sherrick also points to the "liberal view" of Iowa courts on the admissibility of expert testimony.  *See Quad City Bank & Trust v. Jim Kircher & Assoc.*, 804 N.W.2d 83, 92 (Iowa 2011).  But this principle does not apply because Sherrick did not designate Dr. Hardy-Fairbanks as an expert.

[9] Sherrick's expert Caron Jones testified she was concerned that the OB/GYN clinic did not obtain a urine sample from Sherrick to determine whether she was dehydrated and "spilling ketones."

Sherrick's counsel objected when defense counsel asked Ramsay about the timing of the urine test compared to the administration of IV fluids at Genesis. The district court allowed Ramsay to testify Genesis staff gave Sherrick fluids "after drawing her labs." Sherrick now contends this testimony was prejudicial because it cast the hospital tests as accurate. And more to the point, the jury was more likely to credit the expert's opinion that even if the OB/GYN clinic had regularly collected and tested urine samples during Sherrick's appointments, they would not have revealed her condition. On this basis, Sherrick asks for a new trial.

We cannot predicate error on a ruling admitting evidence "unless a substantial right of the party is affected." *Scott v. Dutton-Lainson Co.*, 774 N.W.2d 501, 503 (quoting Iowa R. Evid. 5.103(a)). If "erroneously admitted evidence is merely cumulative" of evidence already in the record, it is not prejudicial. *6305 SW 9th Street, L.L.C. v. Sons of Geil, L.L.C.*, No. 06-1381, 2007 WL 3376834, at *4 (Iowa Ct. App. Nov. 15, 2007) (citing *Vasconez v. Mills*, 651 N.W.2d 48, 57 (Iowa 2002)).

We are unconvinced by Sherrick's claim of prejudice. Assuming without deciding the district court abused its discretion in allowing Nurse Ramsey to interpret the Genesis records, Sherrick cannot show harm to her case from that testimony. *See State v. Jones*, No. 10-0765, 2011 WL 238644, at *3–4 (Iowa Ct. App. Jan. 20, 2011) (bypassing determination on propriety of exclusion and finding any error was harmless). The nurse's reference to the chronology in Sherrick's chart was cumulative to other witnesses sharing those same facts with the jury.

For example, the court accepted the Genesis records as exhibits. And Dr. Martin, one of Sherrick's treating physicians at Genesis, recited the timing of the

tests performed and their results. What's more, Sherrick's counsel cross-examined Nurse Ramsay and apprised the jury that she lacked personal knowledge of the accuracy of the Genesis records. Because Nurse Ramsay's testimony about the Genesis records broke no new ground, any error in its admission was harmless. *See 6305 SW 9th Street*, 2007 WL 3376834, at *4.

To recap, because the district court properly excluded a standard-of-care opinion from Dr. Hardy-Fairbanks and no prejudice resulted from allowing Nurse Ramsay to discuss the Genesis records, we affirm the jury's verdict finding no negligence.

**AFFIRMED.**