# IN THE COURT OF APPEALS OF IOWA

No. 19-2137
Filed March 3, 2021

WILLIAM McGREW and ELAINE McGREW,
     Plaintiffs-Appellants,

vs.

EROMOSELE OTOADESE, M.D. and NORTHERN IOWA CARDIOVASCULAR
AND THORACIC SURGERY CLINIC, P.C.,
     Defendants-Appellees.
_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

Plaintiffs appeal the jury's verdict for defendants in their medical malpractice action. **AFFIRMED.**

Martin Diaz, Swisher, for appellants.

Nancy J. Penner, Jennifer E. Rinden, and Vincent S. Geis of Shuttleworth & Ingersoll, Cedar Rapids, for appellees.

Heard by Mullins, P.J., and May and Schumacher, JJ.

**SCHUMACHER, Judge.**

William McGrew and his wife, Elaine McGrew,[1] appeal a jury verdict for Dr. Eromosele Otoadese and Northern Iowa Cardiovascular and Thoracic Surgery Clinic, P.C.,[2] in their medical malpractice action. Because the rules of civil procedure require the disclosure of expert opinions, we conclude the district court did not abuse its discretion by ruling a physician could only testify concerning his treatment of McGrew and not to matters arising before he began treating him. Also, the district court did not abuse its discretion by ruling another physician could not testify in the case, as he did not provide any direct treatment to McGrew. The McGrews did not provide adequate disclosure of the nature of the doctors' expert opinions. We determine the court did not abuse its discretion by ruling the McGrews could not present evidence of Dr. Otoadese's past relationships with a hospital or medical clinic, as the evidence was more prejudicial than probative. We affirm the decision of the district court.

## I.  Background Facts & Proceedings

McGrew, who was sixty-nine years old, experienced transient vision problems in his right eye. His ophthalmologist believed the problems could be caused by a cataract but wanted to rule out a vascular cause for the symptoms. McGrew had a bilateral carotid duplex ultrasound, which was inconclusive. McGrew's primary care physician, Dr. John Musgrave, referred him to Dr. Otoadese, who ordered a CT angiogram. Dr. Driss Cammoun interpreted the CT

---

[1] We will refer to William McGrew individually as McGrew and to McGrew and his wife together as the McGrews.
[2] We will refer to Dr. Otoadese and Northern Iowa Cardiovascular and Thoracic Surgery Clinic, P.C. together as Dr. Otoadese.

angiogram as showing a sixty-five percent stenosis of the right internal carotid artery. Dr. Otoadese interpreted the CT angiogram as showing a severe, at least seventy percent stenosis of the right carotid artery. Based on these interpretations of the CT angiogram, Dr. Otoadese recommended a right carotid endarterectomy to remove plaque from McGrew's right carotid artery, and McGrew agreed to the surgery.

Dr. Otoadese performed the right carotid endarterectomy on September 2, 2014. Following the procedure, McGrew suffered a stroke, resulting in a facial droop and weakness on his left side. The next day, Dr. Otoadese performed a second surgery, but McGrew's condition did not improve.

On September 26, McGrew was seen by Dr. Ivo Bekavac, a neurologist, for a second opinion regarding his condition. Dr. Bekavac concluded the CT angiogram did not show sufficient carotid stenosis for surgery to be recommended. He stated the CT angiogram showed stenosis of approximately forty percent. Dr. Bekavac also concluded the second surgery was not medically indicated, as McGrew had suffered a stroke more than eight hours before the surgery. Dr. Bekavac had no relationship with McGrew prior to the stroke but provided continuing treatment after the stroke occurred.

Dr. Bekavac asked Dr. John Halloran, a radiologist, for his opinion. Dr. Halloran agreed the CT angiogram did not show a sufficient degree of carotid stenosis to recommend a right carotid endarterectomy. Dr. Halloran found the CT angiogram showed McGrew's right carotid artery had thirty-two percent stenosis. Dr. Halloran never provided direct treatment to McGrew.

On July 29, 2016, the McGrews filed a petition against Dr. Otoadese, alleging medical malpractice.[3] The McGrews claimed Dr. Otoadese recommended and performed an unnecessary medical procedure, which placed McGrew at risk for having a stroke. They claimed Dr. Otoadese did not properly interpret the CT angiogram.

The McGrews' designation of experts, filed on February 6, 2018, included Dr. Bekavac and Dr. Halloran. The designation stated both doctors would be testifying on the applicable standard of care. Dr. Otoadese filed a motion in limine, seeking to exclude the expert opinion testimony of Dr. Bekavac and Dr. Halloran. The district court ruled Dr. Bekavac could testify only about matters relating to his treatment of McGrew. Dr. Bekavac could not give his opinion as to whether the first or second surgery was supported by McGrew's medical condition. The court ruled Dr. Halloran, who had not directly treated McGrew, could not testify.

Dr. Otoadese also sought to exclude evidence relating to other problems he had during his medical career, such as losing privileges at a hospital. The district court ruled this evidence would be precluded as it was irrelevant and unduly prejudicial.

During the trial, the plaintiffs made offers of proof of the testimony of Dr. Bekavac and Dr. Halloran. The jury returned a verdict for the defendants. The McGrews filed a motion for a new trial, claiming the district court abused its discretion by precluding Dr. Bekavac and Dr. Halloran from providing opinion evidence concerning the standard of care. They also claimed the court improperly

---

[3] The petition also named Dr. Cammoun as a defendant. There was a settlement with Dr. Cammoun, and he is no longer a party in the case.

prevented cross-examination of Dr. Otoadese's background and work history. The court denied the motion for a new trial. The McGrews now appeal.

## II.     Expert Witnesses

The McGrews claim the district court abused its discretion by limiting the testimony of Dr. Bekavac and prohibiting Dr. Halloran from testifying. They assert the court misinterpreted the law concerning the admissibility of expert testimony and they were prejudiced by the court's ruling.

We review the district court's evidentiary rulings for an abuse of discretion. *Homeland Energy Sols., LLC v. Retterath*, 938 N.W.2d 664, 684 (Iowa 2020). There is an abuse of discretion when the court's ruling is based on grounds that are unreasonable or untenable. *Anderson v. Khanna*, 913 N.W.2d 526, 536 (Iowa 2018). "A ground is unreasonable or untenable when it is 'based on an erroneous application of the law.'" *Id.* (citation omitted).

The district court relied on *Hansen v. Central Iowa Hospital Corp.*, 686 N.W.2d 476, 485 (Iowa 2004). In *Hansen*, a plaintiff failed to designate her treating physician as an expert witness in accordance with Iowa Code section 668.11 (2001). 686 N.W.2d at 480. The supreme court noted that a treating physician "ordinarily is not required to formulate [an opinion on causation] in order to treat the patient." *Id.* at 482. Under the facts in *Hansen*, the physician "formed his causation opinions as a *treater*." *Id.* The court determined the physician could give his opinion testimony on causation arising from treating the plaintiff, as the opinion was not "formulated as a retained expert for purposes of issues in pending or anticipated litigation." *Id.*

The opinions of Dr. Bekavac and Dr. Halloran concerning whether Dr. Otoadese should have performed the right carotid endarterectomy to remove plaque did not arise from treating McGrew. At the time Dr. Bekavac and Dr. Halloran arrived at their opinions, the surgery had already been performed. Their opinions as to whether the degree of stenosis of the right internal carotid artery warranted surgery did not affect the treatment of McGrew. Unlike the factual situation in *Hansen*, the physicians did not arrive at their opinions as a necessary part of the treatment of McGrew, and we conclude they were not treating physicians. *See* 686 N.W.2d at 482; *Sherrick v. Obstetrics & Gynecology Specialists, P.C.*, No. 17-0939, 2018 WL 5846055, at *4 (Iowa Ct. App. Nov. 7, 2018) (finding a physician's opinion was inadmissible because it did not relate to the care provided to the plaintiff). We conclude the district court properly determined Dr. Bekavac and Dr. Halloran could not testify as treating physicians.

Under Iowa Rule of Civil Procedure 1.500(2)(a), a party must disclose the identity of expert witnesses. *McConkey on behalf of B.M. v. Huisman*, No. 18-1399, 2019 WL 3317373, at *3 (Iowa Ct. App. July 24, 2019). Concerning Dr. Bekavac and Dr. Halloran, the McGrews assert the district court "erroneously focused on their status as treating care providers rather than the fact that they had been fully disclosed as expert witnesses." They state that rather than looking at whether Dr. Bekavac and Dr. Halloran were treating physicians, the court should have considered whether or not the doctors were properly disclosed as expert witnesses. The parties do not dispute that the McGrews advised Dr. Otoadese that they planned to call Dr. Bekavac and Dr. Halloran as witnesses.

In addition to the identity of an expert witness, a party must disclose the opinions held by an expert the party expects to call as a witness. Iowa R. Civ. P. 1.500(1). Dr. Otoadese sought to exclude the testimony of Dr. Bekavac and Dr. Halloran because they did not disclose the opinions they sought to introduce during the trial. The McGrews claim that in addition to properly disclosing that they intended to call Dr. Bekavac and Dr. Halloran as expert witnesses, they appropriately disclosed the proposed testimony of the doctors. If a physician assumes a role in litigation analogous to that of a retained expert, the rules pertaining to discovery of an expert's opinion apply. *Day by Ostby v. McIlrath*, 469 N.W.2d 676, 677 (Iowa 1991).

"[T]he application of [rule 1.508, concerning discovery of an expert witness's opinions] does not necessarily depend on the label or role of the physician. Instead, it hinges on the reason and time frame in which the underlying facts and opinions were acquired by the physician." *Morris-Rosdail v. Schechinger*, 576 N.W.2d 609, 612 (Iowa Ct. App. 1998). The Iowa Supreme Court has stated:

> The disclosure requirements of rule 1.508 are generally limited to physicians retained as experts for purposes of litigation or for trial. However, "even treating physicians may come within the parameters of rule [1.508] when they begin to assume a role in the litigation analogous to that of a retained expert." This will occur if the treating physician focuses more on the legal issues in pending litigation and less on the medical facts and opinions associated in treating a patient.

*Eisenhauer ex rel. T.D. v. Henry Cty. Health Ctr.*, 935 N.W.2d 1, 22 (Iowa 2019) (citations omitted). Thus, under *Eisenhauer*, the question is not whether a witness has been retained as an expert, but rather whether the witness has "assume[d] a role in the litigation analogous to that of a retained expert." *Id.*

A doctor has taken a role analogous to that of a retained expert witness if the "physician focuses more on the legal issues in pending litigation and less on the medical facts and opinions associated in treating a patient." *Id.* Dr. Bekavac and Dr. Halloran were expected to testify concerning the degree of stenosis in McGrew's right carotid artery and whether Dr. Otoadese was negligent in recommending a right carotid endarterectomy. These opinions were relevant to pending litigation and not to the treatment of McGrew, as the opinions arose after the treatment had occurred.

We find Dr. Bekavac and Dr. Halloran had taken "a role in the litigation analogous to that of a retained expert." *See id.* For this reason, the rules pertaining to discovery of an expert's opinion applied to them. *See Day by Ostby*, 469 N.W.2d at 677.

Dr. Otoadese asserts the doctors did not submit medical reports under rule 1.500(2)(b). The district court found the doctors were not required to prepare a written report under Iowa Rule of Civil Procedure 1.500(2)(b).[4] Rule 1.500(2)(b) applies to witnesses who are retained or specially employed to provide expert testimony. *Stellmach v. State*, No. 15-2105, 2017 WL 1735618, at *9 (Iowa Ct. App. May 3, 2017).

Even if Dr. Bekavac and Dr. Halloran were not required to submit an expert report under rule 1.500(2)(b), we find they were subject to the requirements for the

---

[4] Rule 1.500(2)(b) provides:
> Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.

discovery of expert witness opinions under rule 1.500(2)(c). Rule 1.500(2)(c) applies to expert witnesses who are not required to provide a written report. The rule provides:

> Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
> (1) The subject matter on which the witness is expected to present evidence under Iowa Rules of Evidence 5.702, 5.703, or 5.705.
> (2) A summary of the facts and opinions to which the witness is expected to testify.

Iowa R. Civ. P. 1.500(2)(c). A physician designated as an expert is expected to "disclose[ ] a summary of facts and opinions to which he was expected to testify." *See Eisenhauer*, 935 N.W.2d at 21 (citing Iowa R. Civ. P. 1.500(2)(c)(2)).

The exact nature of the doctors' opinions was unknown to the parties. Counsel for plaintiffs indicated he did not have access to the two doctors.[5] Defense counsel then stated, "Well, for heaven sakes, if he doesn't have access to them, I certainly don't." The purpose of the expert witness discovery rules is to "avoid[ ] surprise to the opposing party and to allow the parties to formulate their positions on as much evidence as is available."[6] *Faris v. City of Iowa Falls*, No. 12-0696, 2013 WL 988634, at *5 (Iowa Ct. App. Mar. 13, 2013).

---

[5] The McGrews acknowledge Dr. Bekavac and Dr. Halloran were not retained experts, counsel stating:
> They were treating physicians. That's how we looked at them. And I certainly couldn't control them. If I wanted to retain them, I wouldn't have been able to retain them. They had chosen on their own that this is how they wanted to deal with it, and they weren't going to do anything other than that.

[6] The depositions of Dr. Bekavac and Dr. Halloran were scheduled but were later cancelled by the defense.

We conclude the district court did not abuse its discretion by ruling Dr. Bekavac could only testify concerning his treatment of McGrew, not to matters arising before he began treating him. Also, the court did not abuse its discretion by ruling Dr. Halloran could not testify in the case, as he did not provide any direct treatment to McGrew. The McGrews did not provide adequate disclosure of the nature of the doctors' opinions. We affirm the court's rulings on these issues.

### III.    Defendant's History

The McGrews assert the district court abused its discretion by limiting their ability to cross-examine Dr. Otoadese regarding his qualifications. They wanted to impugn Dr. Otoadese's credibility by presenting evidence to show he voluntarily surrendered his hospital privileges to perform open-heart surgery as part of a settlement with a local hospital and had not performed open-heart surgery since 2009. The McGrews state they were prejudiced because the jury was not provided a complete picture of Dr. Otoadese's work history.

During the trial, counsel for plaintiffs agreed that references to the litigation between Dr. Otoadese and a local hospital would not be discussed. On the issue of whether Dr. Otoadese could perform heart surgery at the hospital, the court stated:

> Well, and again, to the extent that I wasn't clear, I don't think that that's admissible either. Again, I think it can be explored that he used to do that; that it was a large percentage of his practice, he stopped doing it six or seven years ago; that now his practice is more made up of doing something else, again, what the nature of the practice was.

The McGrews also sought to present evidence to show Dr. Otoadese was terminated from a medical clinic and opened his own clinic in 2013. The district court ruled:

> I do believe that once he takes the stand, and in light of some of the statements made in opening about his background, that his background is fully—is fully subject to being explored by counsel for the Plaintiff to an extent, meaning, where did you work? How long were you there? When did you leave? What was the nature of your practice? Those types of things, I think, are—can be gotten into. References to kicked out or the nature in which his relationship ended with [the medical clinic], I think is inadmissible.

The McGrews claim the district court abused its discretion by ruling some parts of Dr. Otoadese's professional history were not admissible. They assert Dr. Otoadese was presented as an expert by the defense and "should have been subjected to the same scrutiny given to retained experts." Dr. Otoadese stated his termination from the medical clinic was related to a patient lawsuit, an out-of-court settlement, and a determination he was not insurable.

Evidence is admissible only if it is relevant; "[i]rrelevant evidence is not admissible." Iowa R. Evid. 5.402. "Evidence is relevant if it has a tendency to make a consequential fact more or less probable than it would be without the evidence." *State v. Thomas*, 766 N.W.2d 263, 270 (Iowa Ct. App. 2009) (citing Iowa R. Evid. 5.401). Even if evidence is relevant, it may still be excluded if the danger of undue prejudice substantially outweighs the probative value of the evidence. Iowa R. Evid. 5.403.

The district court's ruling denying the McGrews' motion for a new trial stated:

> The various evidence offered by the Plaintiffs concerning the ending of the relationship between Dr. Otoadese and [the medical clinic], as

well as Dr. Otoadese's privileges was not relevant to the issues to be decided by the jury in the present case and, further, even if relevant, had prejudicial effect that far exceeded any probative value that that evidence might provide.

We find the district court did not abuse its discretion in excluding this evidence.

Even when the evidence had a minimal probative value, it may also be excluded on the grounds that it is unduly prejudicial.  *See* Iowa R. Evid. 5.403.

> We utilize a two-part test to decide whether evidence should be excluded under rule 5.403.  "First, we consider the probative value of the evidence.  Second, we balance the probative value against the danger of its prejudicial or wrongful effect upon the triers of fact."  Probative value refers to "'the strength and force of the evidence to make a consequential fact more or less probable.'"

*State v. Webster*, 865 N.W.2d 223, 242 (Iowa 2015) (citations omitted).  Evidence may be considered unfairly prejudicial if it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action that may cause a jury to base its decision on something other than the established propositions in the case."  *Id.* at 242–43.

In order to weigh the probative value of evidence against the danger of unfair prejudice, the court considers

> (1) the need for the proffered evidence "in view of the issues and other available evidence," (2) whether there is clear proof it occurred, (3) the "strength or weakness of the prior-acts evidence in supporting the issue sought to be prove[d]," and (4) the degree to which the evidence would improperly influence the jury.

*Id.* at 243 (citations omitted).  "Weighing probative value against prejudicial effect 'is not an exact science,' so 'we give a great deal of leeway to the trial judge who must make this judgment call.'"  *State v. Einfeldt*, 914 N.W.2d 773, 784 (Iowa 2018) (citation omitted).

There was no need for the evidence; there was no clear proof of exactly what occurred leading to the settlement agreements between Dr. Otoadese and the hospital and medical clinic. The evidence gave weak support to the proposition that Dr. Otoadese was negligent. *See Webster*, 865 N.W.2d at 243.

In addition, even if the evidence had some relevance, any probative value would be outweighed by the danger the evidence is unduly prejudicial. *See* Iowa R. Evid. 5.403. The evidence would improperly influence the jury to find Dr. Otoadese liable based on evidence involving different events. *See* Webster, 865 N.W.2d at 243. We conclude the district court did not abuse its discretion in finding the evidence was inadmissible.

The McGrews claim their due process rights were violated because they were unable to present the evidence of Dr. Otoadese's prior work history. This issue was first raised in the McGrews' motion for a new trial. In Dr. Otoadese's response to the motion, he noted the issue may not have been preserved. The district court did not rule on this constitutional issue. We conclude this issue has not been preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Finally, the McGrews' briefing refers to a matter involving a post-trial Board of Medicine settlement with Dr. Otoadese and the failure of Dr. Otoadese to

disclose this on-going investigation during discovery.  We find such issue is not relevant to this appeal.[7]

We affirm the decision of the district court.

**AFFIRMED.**

---

[7] A motion to vacate judgment pursuant to Iowa Rules of Civil Procedure 1.1012 and 1.1013 was filed by the McGrews on January 21, 2020, and was pending at the time of the instant appeal.